UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

GEORGE W. EAMES, JR.

VERSUS

SOUTHERN UNIVERSITY AND
AGRICULTURAL AND MECHANICAL
COLLEGE, ET AL.

CIVIL ACTION

NO. 09-56-JJB

### RULING ON MOTION TO DISMISS

This matter is before the Court on Defendants' motion (doc. 24) to dismiss. Plaintiff filed an opposition. (Doc. 26.) Defendants filed a reply. (Doc. 29.) There is no need for oral arguments. For the following reasons, the Court DENIES Defendants' motion to dismiss.

#### Factual Background

Plaintiff, George W. Eames, Jr., a resident of Baton Rouge, Louisiana, wishes to attend football games, basketball games, and other programs hosted by Southern University and Agricultural and Mechanical College ("Southern University").[1] Because Plaintiff uses a motorized wheelchair, inaccessible facilities at Southern University have prevented him from attending these events.[2] On December 22, 2006, in a previous attempt to gain access to these events, Plaintiff filed a complaint with the United States Department of Education Office for Civil Rights ("OCR").[3]

Relevant to this case, Plaintiff complained of the inability to access sporting events because of architectural barriers at the F.G. Clark Activity Center ("Mini-Dome")

---

[1] Am. Compl. ¶ 10 (doc. 2).
[2] *Id.* ¶ 9-10.
[3] *Id.* ¶ 12.

1

and the A.W. Mumford Stadium ("Stadium").  Pursuant to an OCR investigation finding numerous accessibility barriers, Southern University executed a Commitment to Resolve ("Commitment"), whereby Southern University set forth a timeline for creating accessible facilities.[4]

Plaintiff alleges that Southern University's failure to make many of these alterations has deprived him of participation in and/or benefits of programs, services, and activities, because of his disability.[5]  Specifically, at the Mini-Dome, overly steep ramps caused difficult entry and at the time he filed this suit, because of a then non-operational elevator, he could not access wheelchair-accessible seating.  Although the elevator is now operational, Plaintiff maintains that the Mini-Dome is inaccessible and lacks sufficient wheelchair-accessible seating.[6]  Additionally, Plaintiff alleges that he cannot attend programs, services, and activities hosted at the Stadium because of overly steep ramps, inaccessible restrooms, an inaccessible path from parking provided for persons with disabilities to the Stadium, and insufficient wheelchair-accessible seating.  Because of these various barriers, Plaintiff has been unable to attend sporting events hosted at either the Mini-Dome or the Stadium.[7]

As a result, Plaintiff brought suit alleging violations of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12201 et seq. ("ADA"); Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("RA"); the Louisiana Commission on Human Rights Act, La. Rev. Stat. § 51:2231 et seq. ("LHRA"); and the Louisiana Civil Rights for Handicapped Persons Act., La. Rev. Stat. § 49:148 et seq. ("LRHPA").

---

[4] *Id.* ¶ 12-14.
[5] *Id.* ¶ 30.
[6] *Id.* ¶ 18-21.
[7] Am. Compl. ¶ 24-26.

Plaintiff seeks a declaratory judgment that Defendants are in violation of these statutes; a permanent injunction ordering that they come into compliance; damages associated with Defendants' violations of the law; and attorneys' fees and costs. Also, as a third party beneficiary, Plaintiff seeks specific performance of the Commitment.

In response, Defendants argue that the Court should dismiss Plaintiff's claims for various reasons. The Court addresses these reasons in turn.

## Standard of Review

In reviewing the complaint, courts accept all well-pleaded facts in the complaint as true. *C.C. Port, Ltd. v. Davis-Penn Mortg. Co.*, 61 F.3d 288, 289 (5th Cir. 1995). Courts do not, however, accept as true all legal conclusions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Instead, "the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). That is, a plaintiff must provide sufficient factual content for the court to reasonably infer that the plaintiff is entitled to relief based upon the context of the case and the court's "judicial experience and common sense." *Id.* at 1949-50.

Courts, therefore, must first identify the conclusory allegations, which do not receive a presumption of truth, and then determine whether the remaining factual allegations plausibly give rise to an entitlement of relief. *Id.* at 1950.

Analysis

*Prescription under the ADA and the RA*

Defendants argue that Plaintiff's claims under the ADA and the RA are time-barred.[8] Because the ADA lacks a statute of limitations, courts apply the most analogous state law. *See Goodman v. Lukens Steel Co.,* 482 U.S. 656, 660 (1987). Actions under the ADA are best characterized as actions for fundamental injury to a person's individual rights; therefore, Louisiana's one-year limitation period for personal injury actions applies. *See Hickey v. Irving Indep. Sch. Dist.*, 976 F.2d 980, 983 (5th Cir. 1992) (applying Texas' statute of limitations for personal injury actions). Thus, Plaintiff's claims are time-barred if he filed them more than one year after the date they accrued.

Defendants construe Plaintiff's claims as "facility accessibility" claims, under which the claims would accrue on the date of construction or alteration. *See Frame v. City of Arlington*, 575 F.3d 432, 441 (5th Cir. 2009). However, Plaintiff contends, and the Court agrees, that the claims actually focus on "program accessibility" rather than "facilities accessibility." *See Parker v. Universidad de Puerto Rico*, 225 F.3d 1, 5 (1st Cir. 2000). Significantly, program access requirements, unlike facility access

---

[8] Because Title II of the ADA is modeled on § 504 of the RA, but further applies to state and local governmental entities that do not receive federal financial assistance, the Court considers the claims together and relies upon case law applicable to each. *See* 42 U.S.C. §§ 121333, 12201(a); *see also Bragdon v. Abbott*, 524 U.S. 624, 631-32 (1998); *Frame v. City of Arlington,* 575 F.3d 432, 441 (5th Cir. 2009). Likewise, the Court's analysis of the ADA applies to the RA and the Court does not distinguish between the claims.

requirements, continue to apply to facilities already in existence.  *See* 28 C.F.R. pt. 35, app. A § 35.150.[9]

Although Plaintiff does argue that alterations to the buildings, namely a newly operational elevator in the Mini-Dome and a scheduled renovation to Mumford Stadium, may have occurred within a year before filing, his claims are more appropriately read as complaints of inaccessible programs.  In fact, his complaint focuses on his "wishes to attend football games, basketball games, and other programs hosted by Southern University"[10] and he clearly states that "Plaintiff does not complain about noncompliant construction or alterations."[11]  Therefore, the Court construes Plaintiff's allegations as program accessibility claims.

In arguing that the claim accrued when construction or alteration occurred, Defendant relies on *Frame*.  575 F.3d 432.  There, the Fifth Circuit found that the construction or alteration of a sidewalk constituted an activity, then held that plaintiff's claims accrued on the date the city completed that construction or alteration; i.e., the date the city provided the activity.  *Id.* at 437.  As explanation, the Fifth Circuit stated, "plaintiffs may hold a public entity liable for construction or alterations that do not comply with the ADA, but only within the time period specified by the applicable statute of limitations."  *Id.*  Even though *Frame* dealt with a Title II activity, the rule specifically applies to situations where "construction or alterations" to a facility constitute the

---

[9] So long as Plaintiff is denied readable access to Defendants' programs the violation of ADA continues.  Defendants have argued that Plaintiff should not recover because of his "failure to even allege with specificity a time that he was denied access."  Reply Mem. Supp. Defs.' Mot. Dismiss 6 (doc. 27-3).  Again, however, Defendants misconstrue Plaintiff's claims; Plaintiff seeks to redress the ongoing injuries caused by inaccessible programs.  At trial, he will have to prove those injuries.
[10] Am. Compl. ¶ 10 (doc. 22).
[11] Pl.'s Opp'n Def's Mot. Dismiss 10 (doc. 26).

government activity. *Id.* ("When, for instance, a public entity provides a sidewalk . . . it provides a facility supplying some public demand. . . . [W]e hold that those facilities constitute a service within the meaning of Title II.") (internal quotations omitted).[12] Here, by contrast, the issue is not whether Defendants' construction or alteration created inaccessible facilities, but rather whether the programs offered in those facilities are accessible. The fact that the programs are offered within the facilities is ancillary, as evidenced by the fact that the implementing regulations specifically allow the "reassignment of services to accessible buildings." *See* 28 C.F.R. pt. 35, app. A § 35.150. Because the facilities need not be accessible if the programs themselves are accessible, the Court finds that Plaintiff's claims did not accrue upon completion of alterations. Accordingly, this Court finds that *Frame* does not apply.

To find otherwise would destroy the requirement that governments provide persons with disabilities "meaningful access" to programs. *See Alexander v. Choate*, 469 U.S. 287, 301 (1985). Governments continue to discriminate against persons with disabilities by providing programs in existing non-complaint facilities. Therefore, so long as Plaintiff is denied meaningful access to Defendants' programs, the violation of the ADA continues. *See Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1136-37 (9th Cir. 2002). Plaintiff asserts that barriers still exist; thus, Plaintiff asserts a claim that falls within the statute of limitations.[13]

---

[12] In *Frame*, the construction of the sidewalk was the government service; here, the sporting events are the programs and the buildings are barriers to access those programs.
[13] Even if Plaintiff did not actually attempt to access the programs, the fact that his own knowledge of its inadmissibility prevented him from attempting to attend is enough to allege a claim. *Pickern*, 293 F.3d at 1136-37.

*Damages Claims under the ADA and the RA*

In order to recover damages under the ADA or the RA, a plaintiff must show intentional discrimination. *Delano-Pyle v. Victoria County*, 302 F.3d 567, 574 (5th Cir. 2002). Defendants argue that Plaintiff cannot recover compensatory damages because he cannot establish intentional discrimination towards him, rather than all persons with disabilities. *See Douglas v. Gunsman*, 567 F. Supp. 2d 877, 890 (E.D. La. 2008) ("Acts and omissions which have a disparate impact on disabled persons in general are not specific acts of intentional discrimination against the plaintiff in particular.") *citing Tyler v. City of Manhattan*, 118 F.3d 1400, 1404 (10th Cir. 1997). Plaintiff responds that a showing of intentional discrimination against persons with disabilities *is enough*, and cites case law from various circuits—though not the Fifth—as support.

The Court finds that it is not necessary to resolve this legal dispute. Here, Plaintiff has alleged that Defendants knew of his disability; indeed, he filed a complaint with OCR regarding the inaccessibility of programs offered in these very facilities. Plaintiff, therefore, could show that Defendants not only knew of his disability, but also knew that by doing nothing, they continued to offer programs that Plaintiff could not access on account of his disability. Indeed, the Fifth Circuit's language in *Delano-Pyle* appears to directly cover such a situation. 302 F.3d at 575 (stating that discrimination occurs when a public entity fails to take steps necessary to ensure that "no individual with a disability" is denied services because of a lack of auxiliary services). Surely, here, Plaintiff has alleged that he is being denied services (the sporting events) because of a lack of auxiliary services (accessible facilities). Therefore, the Court will not dismiss Plaintiff's compensatory damages claims.

*Prescription Under Louisiana Statutes*

Defendants also argue prescription of Plaintiff's claims under the LHRA and the LRHPA. Defendants concede that claims under these acts accrue when the injury occurs,[14] but argue that Plaintiff has not identified any injuries occurring within the prescriptive period. As discussed above, however, Plaintiff asserts that architectural barriers continue to interfere with his ability to attend programs. In recognizing Lousiana's clear statement that "[i]t is the intent of the legislature to implement the removal or [sic] architectural barriers so that the physically handicapped may begin to share equally . . . the right to use and enjoy the man-made environment including . . . entertainment," the Court finds that Plaintiff's allegations of ongoing and repeated injuries suffice.[15]  *See* La. Rev. Stat. art. 40:1731. Thus, Plaintiff's claims are not prescribed.

*Third-Party Beneficiary Standing*

Plaintiff, as a third-party beneficiary, also seeks specific performance of the Commitment executed by Southern University. In response, Defendants argue that the Court must dismiss this claim because Plaintiff is not a third-party beneficiary to the Commitment and therefore lacks standing to enforce it.

Louisiana law allows parties to stipulate a benefit for a third person, known as a stipulation *pour autrui*. La. Civ. Code. art. 1978. Indeed, such stipulations are favored.

---

[14] Mem. Supp. Defs.' Mot. Dismiss 7 (doc. 24-2). Because Defendants did not argue that these claims accrue on the date of construction or alteration, nor provided authority to suggest so, the Court need not determine when the facilities underwent alteration.

[15] The Court notes that nothing in this ruling alters the fact that Plaintiff must ultimately prove his injuries; instead, the Court's finding is that Plaintiff has sufficiently *alleged* his injuries.

8

*Andrepont v. Acadia Drilling Co.*, 231 So. 2d 347, 351 (La. 1969).  The Louisiana Supreme Court recently announced three criteria for determining whether parties provided a stipulation *pour autrui*: (1) the stipulation must be manifestly clear; (2) there must be certainty as to the benefit provided the third party; and, (3) the benefit must not be a mere incident of the contract.  *Joseph v. Hosp. Serv. Dist. No. 2*, 05-2364 (La. 10/15/06); 939 So. 2d 1206, 1212.  Taking into account the above criteria, courts must evaluate each contract on its own terms and under its unique conditions.  *Id.*

Regarding the first criteria, the Court notes that the very purpose of the Commitment was to benefit a class of persons by requiring that Southern University "make its programs and activities accessible to persons with disabilities."[16]  Because Plaintiff is a member of that class, it is irrelevant that the Commitment does not name him.  *See Andreport*, 231 So. 2d at 353 ("The contention that the third party was not named is without merit.").  In addition to the Commitment's stated purpose, Southern University and OCR each knew that Plaintiff's access to programs at Southern University depended upon the Commitment's fulfillment.  *Cf. Paul v. Louisiana State Employees' Group Ben. Program*, 99-897 (La. App. 1 Cir. 5/12/00); 762 So. 2d 136, 142 (finding no stipulation in part because there was no evidence that the contracting parties knew that plaintiff's employment was conditioned on the results of the contracted test).  Thus, the Court finds that the stipulation is manifestly clear.

In determining the second criterion, whether there is certainty as to the benefit, the Court finds helpful factors articulated by Professor J. Denson Smith:[17]

---

[16] Commitment to Resolve 1 (doc. 20-4).
[17] In *Joseph*, the Louisiana Supreme Court reaffirmed the use of Professor Smith's test.  939 So. 2d at 1212.

> (1) The existence of a legal relationship between the promisee and the third person involving an obligation owed by the promisee to the beneficiary which performance of the promise will discharge; (2) the existence of a factual relationship between the promisee and the third person, where (a) there is a possibility of future liability either personal or real on the part of the promisee to the beneficiary against which performance of the promise[ ] will protect the former; (b) securing an advantage for the third person may beneficially affect the promisee in a material way; (c) there are ties of kinship or other circumstances indicating that a benefit by way of gratuity was intended. *Andrepont*, 231 So. 2d at 351 (citing J. Denson Smith, *Third Party Beneficiaries in Louisiana: The Stipulation Pour Autrui,* 11 T󠁕ᴜʟ. L. Rᴇᴠ. 18, 58 (1936)).

Under the Commitment, if Southern University had fulfilled its promises and ensured access to programs at the Mini-Dome and the Stadium, programs that it makes publically available and thus legally must make accessible to all members of the public, then any corollary obligations it owed towards Plaintiff would have extinguished. Thus, there are grounds to find the existence of a legal relationship. In like manner, a factual relationship exists in that Plaintiff is a member of the public seeking to attend publicly available games; if Southern University had provided programs that were readily accessible to persons with disabilities, then it would have extinguished any personal or real liabilities. Thus, the Court finds that there is certainty as to the benefit provided by the stipulation.

The third criterion requires a court to differentiate between stipulated benefits and those that are a mere incident to the contract. Although a close decision, the Court notes many factors suggesting that the benefit is not a mere incident: Plaintiff's complaint initiated OCR's investigation and directly led to the execution of the Commitment; Plaintiff's OCR case number is clearly referenced in the Commitment; and

Plaintiff is a member of the very class the Commitment aimed to address. Indeed, the Commitment arose as a way to shield Plaintiff from further discrimination caused by inaccessible programs. Thus, in agreeing to the terms of the Commitment, the parties gave rise to a stipulation *pour autrui* on behalf of persons with disabilities, and Plaintiff in particular. *See Lawson v. Shreveport Waterworks Co.,* 35 So. 390, 391-2 (La. 1903) (finding that where a contractor contracted to build a bridge, the stipulation was not merely for the adjacent land owners, but was *pour autrui* on behalf of all members of the public). Therefore, Plaintiff has standing to enforce the Commitment as a third-party beneficiary.

*Injunctive and Declaratory Relief*

Defendants also move to dismiss Plaintiff's claims for injunctive and declaratory relief. Defendants argue that Plaintiff fails to demonstrate that he will suffer an injury that is concrete, real, and imminent. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983). Indeed, *Lyons* does require that a plaintiff seeking injunctive or declaratory relief must show a likelihood of future harm. But, in reaching this rule, the Supreme Court clearly and explicitly reasoned that an individual cannot obtain an injunction "[a]bsent a sufficient likelihood that he will again be wronged in a similar way." *Id.* at 111. Thus, the appropriate inquiry is whether Plaintiff adequately alleged that he will again be wronged. In alleging that he wishes to attend football games, basketball games, and other programs, but cannot because of barriers to accessibility, Plaintiff certainly establishes that he will suffer injury the very next time he attempts to attend

such a program. Presumably, such injury is as imminent as the next scheduled sporting event. Thus, the Court finds that Defendants' argument is meritless.

*Individually Named Defendants*

Defendants further argue that Plaintiff improperly joined Defendants Kofi Lotomey and Tony M. Clayton, because Plaintiff named them solely in their official capacities and Plaintiff does not seek any individual relief from them. Thus, Defendants argue that both individuals are extraneous and unnecessary parties. In response, Plaintiff argues that because of sovereign immunity concerns, the parties are necessary in order to maintain a suit for injunctive relief. *See Ex Parte Young*, 209 U.S. 123 (1908).

Whether or not the individual parties are necessary is irrelevant. Instead, the Court must determine whether the parties are permissive. *See* Fed. R. Civ. Pro. 20. Regarding defendants, a plaintiff may join defendants if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action." *Id.* at 20(a)(2). Because Plaintiff alleges that each individual's responsibilities include ensuring that Southern University fulfills its non-discrimination obligations, and because the individuals are important actors in the underlying facts,[18] the Court finds that Plaintiff did not improperly join them. Thus, the Court will not dismiss them from the case.

---

[18] Defendant Clayton is Chairman of the Board of Supervisors for Southern University and Defendant Lotomey, as Chancellor of Southern University, signed the Commitment to Resolve.

<u>Conclusion</u>

The Court finds that Plaintiff's claims are not prescribed and that Plaintiff has standing to proceed on all claims.  The Court further finds that Plaintiff may seek damages, injunctive relief, and declaratory relief.  Finally, the Court finds that Plaintiff's naming of individual Defendants is appropriate.

Accordingly, Defendants' motion (doc. 24) to dismiss is DENIED.

Signed in Baton Rouge, Louisiana, on October 16, 2009.

_____
**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**